IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GRETCHEN MCDANIEL, and MATTHEW MCDANIEL, husband and wife, individually and as the parents and natural guardians of ALAINA MCDANIEL, a minor child, | ) ) ) ) ) ) | CONSOLIDATED AT NO. 2:12-cv-1439<br><br>Civil Action No. 2:12-cv-1439 |
| Plaintiffs, | ) ) | District Judge Nora Barry Fischer<br>Magistrate Judge Lisa Pupo Lenihan |
| vs. | ) ) ) | |
| KIDDE RESIDENTIAL and FIRE & COMMERCIAL, a division of UT FIRE & SECURITY; and SAM'S CLUB, a Division of Wal-Mart Stores, Inc., | ) ) ) ) ) | |
| Defendants. | ) | |

_____

| | | |
|---|---|---|
| ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY a/s/o MATTHEW AND GRETCHEN MCDANIEL, | ) ) ) ) | Civil Action No. 2:12-cv-1473 |
| | ) ) | District Judge Nora Barry Fischer |
| Plaintiffs, | ) ) | Magistrate Judge Lisa Pupo Lenihan |
| vs. | ) ) | |
| KIDDE RESIDENTIAL & COMMERCIAL, and SAM'S CLUB, | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM ORDER

The above-captioned case at Civil Action No. 2:12-cv-1439 was filed on October 4, 2012 and referred to United States Magistrate Judge Lisa Pupo Lenihan for pretrial proceedings in accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Rules 72.C and 72.D of the Local Rules of Court. Likewise, the above-captioned case at Civil Action No. 2:12-cv-1473

1

was filed a week later and referred to Magistrate Judge Lenihan. Subsequently, Magistrate Judge Lenihan entered an Order in Civil Action No. 2:12-cv-1473, consolidating that case with Civil Action No. 2:12-cv-1439. Once discovery concluded, she addressed Defendants' summary judgment motion.

Her Magistrate Judge's Report and Recommendation ("R&R") (Docket No. 93) filed on February 9, 2015, recommended that the Motion for Summary Judgment filed by Defendants Kidde Residential & Commercial and Sam's Club (Docket No. 67) be denied. Service was made on all counsel of record. The parties were informed that in accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule of Court 72.D.2, the parties had fourteen (14) days from the date of service to file objections to the R&R. On February 23, 2015, Defendants Kidde Residential & Commercial and Sam's Club filed Objections (Docket No. 94). On March 6, 2015, Plaintiff Allstate Property and Casualty Insurance Company filed its Response to the Objections. (Docket No. 95), and Plaintiffs Gretchen and Matthew McDaniel filed their Response. (Docket No. 96).

After review of the pleadings, motion and briefing, documents of record, the Objections and Responses thereto, together with the R&R, the following Order is entered:

**AND NOW,** this 24th day of March 2015, it is hereby **ORDERED** that the Motion for Summary Judgment (Docket No. [67]) is **DENIED**.

**IT IS FURTHER ORDERED** that the R&R (Docket No.[ 93]) of Magistrate Judge Lenihan, dated February 9, 2015, is adopted as the Opinion of the Court. In support of this Order, the Court notes the following:

Defendants contend that Judge Lenihan's R&R contained two fundamental legal errors. (Docket No. 94 at 1) First, they argue that the Court should not have considered that the subject

2

fire extinguisher is used in emergency situations in its analysis of the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa.C.S. § 201-1 *et seq.*, and punitive damages claims. (*Id.*). Second, they contend that Plaintiffs may not pursue both a malfunction theory and a manufacturing defect claim in a single action. (*Id.*).

The Court first addresses the objections as to the UTPCPL claim. The Court finds wholly unpersuasive Defendants' contention that the R&R "would automatically find potential liability under the UTPCPL, and the concomitant prospect of treble damages, virtually any time that a product intended to be used in an emergency is found defective." (*Id.* at 3). The R&R did not incorrectly reduce the legal standard "simply because the product at issue, a fire extinguisher, is used during an emergency." (*Id.* at 1). Rather, it set forth a thorough analysis before explicitly finding that Plaintiffs came forward with evidence to support a reasonable finding of misrepresentation under the UTPCPL. (Docket No. 93 at 14). This Court agrees that Plaintiffs have set forth sufficient evidence in support of this claim, as a reasonable jury certainly could find that Plaintiff Gretchen McDaniel, a consumer, justifiably relied on the manufacturer and seller Defendants' wrongful conduct or representation that the subject extinguisher would in fact extinguish fires. (*Id.*). To that end, whether such reliance on a representation is reasonable or justifiable is "generally a question of fact that should be presented to the jury." *Tran v. Metro. Life Ins. Co.*, 408 F.3d, 139 (3d Cir. 2005); *see also Toy v. Metro. Life Ins. Co.*, 928 A.2d 186, 208 (Pa. 2007) (same).

Turning to the punitive damages claim, the Court agrees that Plaintiffs have introduced evidence raising a genuine issue of material fact that Defendants' conduct was intentional, willful, wanton, or reckless. *Phillips v. Cricket Lighters*, 883 A.2d 439, 446 (Pa. 2005) (citations omitted) (setting forth standard for punitive damages claim). The Court notes the evidence of

record revealing the failures of Kidde's quality control department. (Docket No. 93 at 24-25). For example, Kidde's Quality Control Manager, Stuart Jones testified that he was unaware of similar complaints of fire extinguishers failing to discharge, even though it was his responsibility to oversee customer complaints and examine returned products. (*Id.* at 25); (Docket No. 75-15 at 3, 6:6-11). Similarly, Theresa Farrell, Kidde's corporate designee as to the customer call logs, testified that she had the most knowledge of anyone in her department about the customer call and complaint processes. (Docket No. 96-1 at 38, 86:17-23). Yet, her testimony demonstrated that she was unaware of what follow-up procedures occurred after Kidde received complaints of defective, non-, or malfunctioning extinguishers. *See, e.g.* (*Id.* at 28, 76:7-11; 76:22-25; 42, 90:11-15). Based on the above, the Court agrees with the R&R's conclusion that punitive damages may be appropriate as a reasonable jury could find that Kidde was recklessly indifferent as to the safety of its customers. (Docket No. 93 at 25).

Defendants' final objection is that Plaintiffs' specific defect and malfunction theories are mutually exclusive. (Docket No. 94 at 7-8). However, in this Court's estimation, their argument is based on an incorrect reading of the Pennsylvania Supreme Court's holding in *Barnish v. KWI Building Co.*, 980 A.2d 535 (Pa. 2009). (Docket No. 94 at 7-8). First, *Barnish* is distinguishable from the instant case as it involved a product which functioned properly for ten years before it was allegedly defective. *Barnish*, at 547. Here, the fire extinguisher was never used before it allegedly did not discharge. (Docket No. 1 at ¶ 9). To that end, the Court explicitly limited its holding as follows:

> [o]ur holding, however, does not bar all malfunction theory cases involving a product that has functioned in the past and then malfunctions, because such a holding would eliminate the malfunction theory for all cases other than ones where a product malfunctions on its first use. Instead, to survive summary judgment, a plaintiff who admits that the product functioned

properly in the past must present some evidence explaining how the product could be defective when it left the manufacturers control and yet still function properly for a period of time.

*Id.* at 547. Moreover, in the context of the pending summary judgment motion, *Barnish* provides:

> . . . we resort to the standard rules of summary judgment set forth above and the elements of a strict liability claim. In order to survive summary judgment, the plaintiff must present evidence to create a question of material fact on each element of the claim. In a strict liability cause of action, the plaintiff must present evidence of a defect, evidence that the defect caused the injury, and evidence that the defect existed at the time the product left the manufacturer's control. Under the malfunction theory, the plaintiff can demonstrate these elements through circumstantial evidence.

*Id.* at 546-47. Given same, this Court agrees with the R&R that the malfunction theory "affords a plaintiff an alternative route to establishing the existence of a defect but does not ban the plaintiff from producing direct evidence that by itself would be insufficient under the specific defect theory." (Docket No. 93 at 11) (quoting *Del Baggio v. Maytag Corp.*, 660 F. Supp. 2d 626, 633 (W.D.Pa. 2009)). Lastly, the Court points to the Pennsylvania Supreme Court's recent holding in *Tincher v. Omgea Flex, Inc.*, 104 A.3d 328 (Pa. 2014), wherein it explained that:

> [t]he credibility of witnesses and testimony offered, the weight of evidence relevant to the risk-utility calculus, and whether a party has met the burden to prove the elements of the strict liability cause of action are issues for the finder of fact, whether that finder of fact is judge or jury.

*Id.* at 407.

*s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

cc/ecf: All counsel of record.