# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GRETCHEN MCDANIEL, and <br> MATTHEW MCDANIEL, husband and <br> wife, individually and as the parents and <br> natural guardians of A. M., a minor child, <br><br> Plaintiffs, <br><br> and <br><br> ALLSTATE PROPERTY AND <br> CASUALTY INSURANCE <br> COMPANY, <br><br> Consolidated Plaintiff, <br><br> vs. <br><br> KIDDE RESIDENTIAL & <br> COMMERCIAL, a division of UT FIRE <br> & SECURITY; and SAM'S CLUB, a <br> Division of Wal-Mart Stores, Inc., <br><br> Defendants. | Civil Action No. 2:12-cv-1439 <br> District Judge Nora Barry Fischer |

## MEMORANDUM OPINION

This is a products liability case wherein Plaintiffs, Gretchen and Matthew McDaniel, and Allstate Property and Casualty Insurance Company ("Allstate"), allege that a fire extinguisher manufactured by Defendant Kidde Residential & Commercial ("Kidde") and sold by Defendant Sam's Club did not function as designed and advertised. (Docket No. 1). Specifically, Plaintiffs allege that when Gretchen McDaniel attempted to use the subject extinguisher to combat a kitchen

1

fire, nothing came out of the extinguisher. (Docket No. 1). Mr. and Mrs. McDaniel seek damages for Mrs. McDaniel's personal injuries, and Allstate, by way of subrogation right, seeks to recover damages for the McDaniels' home. (Docket No. 1).

Presently before the Court is Defendants' Motion in Limine to Exclude Testimony of David J. Bizzak, Ph.D., P.E., (hereinafter "the Motion"). (Docket No. 117). The Court has received and reviewed Defendants' Motion, (Docket No. 117), the Brief in Support of the Motion, (Docket No. 118), Plaintiffs' Brief in Opposition, (Docket No. 126), Defendants' Reply Brief, (Docket No. 131), and various deposition transcripts, including that of Drs. Bizzak and Cagan (Docket Nos. 135–152, 154–156). The Court also convened a Hearing and Oral Argument regarding the Motion on July 24, 2015, (Docket No. 133), at which Dr. Bizzak did not testify,[1] (Docket Nos. 130, 132, 133). Rather, he submitted an affidavit in response to the Daubert challenge. (Docket No. [132]). The Court also offered the parties the opportunity to submit supplemental briefing. (Tr. at 78:3–6).[2] Counsel for both parties declined the Court's invitation. (*Id.* at 78:7–8).3 For the following reasons, Defendants' Motion is DENIED.

## I. BACKGROUND

*The Incident*

Plaintiff Gretchen McDaniel ("McDaniel") purchased a twin-pack of Kidde-brand fire

---

[1] On July 14, 2015, Defendants moved to compel Dr. Bizzak's presence at the hearing. (Docket No. 122). On July 17, 2015, this Court Ordered Plaintiffs to either bring Dr. Bizzak to the hearing, or alternatively have Dr. Bizzak provide an affidavit responsive to Defendants' Daubert challenge. (Docket No. 130). Plaintiffs chose to file an affidavit, and therefore, his presence was not necessary. (Docket No. 132).
[2] "Tr." refers to the transcript of the July 24, 2015 Hearing and Oral Argument, which is filed of record at Docket Number 153.
[3] Further, the Court has now had the opportunity to review the Plaintiff's McDaniels' Witness List and Offer of Proof at Docket No. [174] and Plaintiff Allstate's Witness List and Offer of Proof at Docket No. [175] where it is stated that Dr. Bizzak will testify in accordance with his expert report regarding the testing and examination of the subject fire extinguisher.

2

extinguishers (model FA110G) at Defendant Sam's Club in December 2008. (Docket No. 76 at ¶ 1). On October 17, 2010, while McDaniel was making donuts in her kitchen with her older daughter, McDaniel left a large pot of oil to fry donuts on the stove at a low setting for less than 10 minutes unattended. (*Id.* at ¶¶ 16–17, 20). When McDaniel returned to the kitchen and lifted the lid of the pot, the oil in the pot ignited into flames. (*Id.* at ¶ 21). McDaniel then retrieved the fire extinguisher (hereinafter "subject fire extinguisher") located near the stove. (*Id.* at ¶ 22).

At the time of the fire, the subject fire extinguisher had never been used, and its pressure gauge indicated that it was fully charged. (*Id.* at ¶¶ 23–24). McDaniel tried to make the subject fire extinguisher work by squeezing the handles together "at least three times, if not four times," but it would not work. (*Id.* at ¶ 25). She then picked up the pot of burning oil and carried it from the kitchen stove towards the laundry room exit, approximately fifteen feet away, with the goal of carrying the pot of burning oil outside of her home. (*Id.* at ¶ 31). McDaniel dropped the pot of burning oil in the laundry room and suffered severe burns. (*Id.* at ¶ 34). After unsuccessfully trying to move the burning pot outside, McDaniel took her daughters outside of the house. (*Id.* at ¶ 35). McDaniel then returned to her house, and for the third or fourth time, squeezed the handles of the subject fire extinguisher together, but it would not discharge. (*Id.* at ¶ 36).

*Theory of Defect and Plan for Testing*

Allstate, as subrogee of Matthew and Gretchen McDaniel, hired Robert Rice ("Rice") to investigate the fire's origin and cause. (Docket No. 82 at ¶ 67). Rice x-rayed both the subject fire extinguisher and the exemplar. The x-ray of the exemplar fire extinguisher revealed that the spring was straight up and down, but the x-ray of the subject fire extinguisher revealed that the spring was visibly bent. (*Id.* at ¶ 75). Rice determined that the spring was not seated properly within the subject

3

fire extinguisher. (Docket No. 77 at ¶¶ 73, 74). Defendants dispute that the spring was not seated properly and that any bend in the spring rendered the Fire Extinguisher defective. (Docket No. 82 at ¶ 74). Rice transferred the subject fire extinguisher and the exemplar to Dr. David Bizzak ("Dr. Bizzak") for forensic evaluation.[4] (*Id.* at ¶ 76).

Dr. Bizzak holds a Ph.D. in mechanical engineering, is a registered Professional Engineer, and specializes in the forensic examination of product failures. (Docket No. 126). Dr. Bizzak examined the x-rays provided by Mr. Rice, and theorized that the bent spring caused the fire extinguisher to be defective. (Docket No. 116-7 at 3). Dr. Bizzak opined that Mrs. McDaniel was unable to discharge the subject fire extinguisher because her grip force was insufficient to overcome increased pressure from: (1) greater compression from the bent spring, and (2) the higher pressure charge in the cylinder. (*Id.*).

To test his theory that the subject extinguisher required a greater than normal force to discharge, Dr. Bizzak determined that the best and most repeatable means for testing the fire extinguishers was to apply force directly to the valve stem rather than squeezing the handles together. (Docket No. 77 at ¶ 80). Defendants dispute Dr. Bizzak's decision that the "best and most repeatable method" for testing the fire extinguisher was to apply force directly to the valve stem, arguing instead that the better method was to squeeze the handles together. (Docket No. 82 at ¶ 80).

*Testing of the Fire Extinguishers*

On July 11, 2011, Dr. Bizzak and representatives from Kidde and Sam's Club, including

---

[4] The Court notes that Rule 703 and ample case law support the premise that experts can rely on the observations and conclusions of other experts when forming their own opinion. *See* Fed. R. Evid. 703; *see also*, Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd., No. CIV.A. 09-290, 2012 WL 6562221, at *14 (W.D. Pa. Dec. 15, 2012).

Kidde's Senior Product Design Engineer Ronald Mauney,[5] attended the destructive examination of the subject fire extinguisher. (Docket No. 77 at ¶¶ 77–78). All of the people in attendance had the opportunity to photograph or film the examination, and the record in fact shows that photographs were taken during the examination. (Docket No. 117-6 at Figure 8). During the examination, one of Dr. Bizzak's assistants applied force directly to the valve stem, using a gauge designed to measure the force that was being applied. (*Id.* at ¶ 81). On the first attempt to discharge the subject fire extinguisher, the gauge "bottomed out" at 35 pounds, and the subject fire extinguisher did not discharge. (*Id.* at ¶ 82). On the second attempt to discharge the subject fire extinguisher, the valve stem depressed, and the fire extinguisher discharged. (*Id.* at ¶ 83). The exemplar fire extinguisher discharged on the first attempt after 26 pounds of force was applied directly to the valve stem. (*Id.* at ¶ 84). Defendants do not dispute what happened during the testing, but contend that that the manner in which Dr. Bizzak tested the fire extinguishers was scientifically invalid, and therefore, the results of the testing are scientifically indefensible. (Docket No. 82 at ¶¶ 81-84).

After both fire extinguishers were discharged, Dr. Bizzak took their measurements to compare them against Kidde's manufacturing specifications. (Docket No. 77 at ¶ 85). According to Kidde's design drawings, the vertical positioning of the fire extinguisher's offsets—i.e. the part where the spring sits—is designed to be 0.210 +/- 0.010 inches. (*Id.* at ¶ 86). Dr. Bizzak determined that the subject fire extinguisher did not meet Kidde's manufacturing specifications in that the vertical positioning of the offsets within the subject fire extinguisher's valve-to-dip coupling varied from 0.175 to 0.181 of an inch. (*Id.* at ¶ 87). The vertical positioning of the exemplar's offsets was within tolerance. (*Id.* at ¶ 88). Defendants do not dispute what Kidde's design drawings illustrate.

---

[5] Keith Wagner and Jules Langlose of R.J. Lee Group, Inc. were also in attendance. *See* Docket No. [174] at 4.

(*See* Docket No. 82 at ¶ 87). Defendants do dispute, however, that any variance in the offsets rendered the fire extinguisher defective. (*Id.*). Defendants rely on the deposition testimony of Kidde's Engineering Manager, Thomas Lucier, who stated that the dimensions of the offsets are not critical to the function of the Fire Extinguisher, and therefore they maintain, the subject fire extinguisher was not defective. (*Id.* at ¶¶ 86-87, 89). Given the results of his testing and examination, including the measurements of the tested extinguishers, Dr. Bizzak, on the other hand, concludes that the subject extinguisher was defective because it required a greater than normal force to discharge. (Docket No. 117-6).

*Kidde's Expert – Dr. Jonathan Cagan*

Kidde's expert, Dr. Jonathan Cagan, like Dr. Bizzak, also holds a Ph.D. in mechanical engineering and is a Professional Engineer. (Docket No. 117-3). Furthermore, Dr. Cagan currently teaches at Carnegie Mellon University and has numerous publications. (*Id.*). After examining an exemplar fire extinguisher, observing the examination of the disassembled subject fire extinguisher on September 30, 2013, and reviewing Dr. Bizzak's expert reports, Dr. Cagan opines that the subject fire extinguisher was not defective. (*Id.*).

Dr. Cagan contends that the subject fire extinguisher was not defective because he believes that the spring Dr. Bizzak identified as "deformed" was not actually deformed, that the subject fire extinguisher had a proper charge level, and that Dr. Bizzak employed improper testing methods. (*Id.*). Regarding the alleged improper testing methods, Dr. Cagan states that Dr. Bizzak did not use a proper method in assessing the subject fire extinguisher because rather than squeeze the handle, Dr. Bizzak applied force through a spring gauge directly to the subject fire extinguisher valve stem. (*Id.*).

6

## II. LEGAL STANDARD

Federal Rule of Evidence 702, which memorializes the Supreme Court's landmark case, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), provides the basic framework for the admissibility of expert testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. The United States Court of Appeals for the Third Circuit has held that "Rule 702 embodies a trilogy of restrictions on expert testimony: qualification, reliability and fit." *Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003) (citations omitted). "[T]he district court acts as a gatekeeper, preventing opinion testimony that does not meet the requirements of qualification, reliability and fit from reaching the jury." *Id*. In this role, the district court is not the finder of fact but must focus on the methodology of the expert in order to "satisfy itself that 'good grounds' exist for the expert's opinion." *United States v. Mitchell*, 365 F.3d 215, 244 (3d Cir. 2004) (citing *Daubert*, 509 U.S. at 590); *In re TMI Litigation*, 193 F.3d 613, 713 (3d Cir. 1999) (district court should not conflate "its gatekeeping function with the fact-finders' function as the assessor of credibility"). "The District Court has broad discretion in determining the admissibility of evidence, and 'considerable leeway' in determining the reliability of particular expert testimony under *Daubert*." *Walker v. Gordon*, 46 Fed.Appx. 691, 694 (3d Cir. 2002) (citing *Kumho Tire Co., Ltd. v.*

*Carmichael*, 526 U.S. 137, 152-53 (1999)).

"Rule 702, which governs the admissibility of expert testimony, has a liberal policy of admissibility." *Kannankeril v. Terminix Intern., Inc.*, 128 F.3d 802, 806 (3d Cir. 1997). The party that proffers the expert testimony is not required to prove to the court that the expert's conclusion is correct. *See Mitchell*, 365 F.3d at 244 (citing *Ruiz–Troche v. Pepsi Cola Bottling Co.*, 161 F.3d 77, 85 (1st Cir. 1998) (citations omitted)). The focus is on the process and methodology employed by the expert. *Id.* In assessing that methodology, the Third Circuit has listed several factors it deems "important" in considering an expert's methodology:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

*In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 742 n.8 (3d Cir. 1994).

The party proffering the expert must only demonstrate that the expert arrived at his or her conclusion in a reliable manner. *Id.*; *see also Kannankeril*, 128 F.3d at 809 ("The trial judge must be careful not to mistake credibility questions for admissibility questions."). Finally, the party asserting the admissibility of the proffered testimony has the burden to demonstrate, by a preponderance of the evidence, that the opinions are based on "good grounds." *Kannankeril*, 128 F.3d at 807.

### III. ANALYSIS

As the Third Circuit discussed in *Schneider ex rel. Estate of Schneider v. Fried*, to succeed in their motion to disqualify Plaintiffs' expert witness, Defendants must show that Dr. Bizzak's opinion

fails to meet the requirements set forth in Rule 702, namely qualification, reliability, and fit. 320 F.3d at 404. Defendants do not challenge that Dr. Bizzak, credentialed with a Ph.D. in mechanical engineering and registered as Professional Engineer, is sufficiently qualified to render an opinion as to the operability of their product and the amount of force necessary to cause such product to discharge. (*See* Docket No. 126 at 5). Moreover, Defendants do not attempt to argue that Dr. Bizzak's testimony is a bad "fit" to the disputed issues in this case such that it will not assist the trier of fact. (*Id.* at 13). Defendants' sole challenge is that Dr. Bizzak's methodology is unreliable. (Docket No. 118 at 2). For the reasons that follow, this Court disagrees.

Initially, Defendants do not argue that Dr. Bizzak's opinion based on the examination of the x-rays and measurements of the subject fire extinguisher alone fails to meet the requirements set out in Fed. R. Evid. 702 and related case law. To the contrary, Defendants' own expert provides an opinion in much the same way and based on the same information as Dr. Bizzak. After reviewing the x-rays and measurements, Dr. Cagan opines that the bent or deformed spring did not have any effect on the performance of the subject fire extinguisher. Because both experts employ essentially the same technique, i.e., using the x-ray and measurements to provide an opinion, Defendants' motion in limine in this regard is denied. *See e.g.*, Crowley v. Chait, 322 F.Supp.2d 530, 552 (D.N.J.2004) ("Having heard oral argument on the Daubert motions, and having reviewed the various pleadings and exhibits, I find that the relative positions of the parties can be summarized in one sentence: 'the opinions of my experts are reliable because they're mine and yours aren't because they're yours.'"). As Judge Becker wrote in *Mitchell*, *supra*,

> Experts with diametrically opposed opinions may nonetheless both have good

grounds for their views, and a district court may not make winners and losers through its choice of which side's experts to admit, when all experts are qualified. Rather the same standards of reliability and helpfulness should be applied to both sides, with a "preference for admitting any evidence having some potential for assisting the trier of fact."

*Mitchell*, 365 F.3d at 245 (citing *United States v. Velasquez*, 64 F.3d 844, 848–49 (3d Cir. 1995)).

The remaining issue is whether Dr. Bizzak's method for testing the force needed to discharge the subject fire extinguisher meets the requirements of *Daubert.* As set forth above, the Third Circuit in *In re Paoli, supra,* articulated a series of non-exclusive factors to guide district courts when determining whether an expert's testimony is reliable. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d at 742 n.8. To this end, Defendants argue that Dr. Bizzak's testimony fails to show: (1) that his method of testing was generally accepted, and (2) that the relationship between how the testing was conducted and the underlying method was adequate. (Docket No. 118 at 13–15).

*1.    Whether the Method Is Generally Accepted*

Defendants argue that "Dr. Bizzak cannot establish that his testing is a generally accepted method for testing fire extinguishers . . . ." (Docket No. 118 at 15). Despite Defendants' claim that Dr. Bizzak's testing should not be admitted because it was not a generally accepted method, the parties agree that there is no standard protocol or method for testing fire extinguishers. (*See* Docket No. 126 at 7). Kidde admits that its testing protocol consists of merely taking a fire extinguisher, pulling the pin, and pressing the trigger. (*Id.* at 6). Dr. Bizzak, on the other hand, tested the fire extinguishers by using a pressure gauge to measure the force needed to depress the pin in the extinguisher at issue and an exemplar, and compare the two measurements given his theory that the

10

subject fire extinguisher required a greater than normal force to discharge. (Docket No. 118 at 5). Because Dr. Bizzak created a testing methodology based on his experience as a Professional Engineer, this factor does not weigh against admitting Dr. Bizzak's testimony in this Court's estimation.

Moreover, while Dr. Bizzak's method may not be perfect, it does not need to be to meet the relatively liberal standard of admissibility under Rule 702. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d at 743 ("The grounds for an expert's opinion merely have to be good, they do not have to be perfect."); *see also Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008) (quoting *Kannankeril*, 128 F.3d at 806) ("Rule 702, which governs the admissibility of expert testimony, has a liberal policy of admissibility.").

    *2.      The Existence and Maintenance of Standards Controlling the Technique's Operation*

Defendants next argue that Dr. Bizzak conducted his testing in an unreliable fashion. (Docket No. 118). To support their argument, Defendants point to a number of perceived problems including, (1) that Dr. Bizzak did not actuate the extinguisher using the handle as was intended by Kidde, (2) that Dr. Bizzak's assistant used an uncalibrated gauge, (3) that the test was performed on a surface which did not appear to be level, and (4) that any angle the gauge had beyond the straight up and down direction was unknown and unrecorded. (Docket No. 118). In response, Plaintiffs note that Dr. Bizzak had his own scientific reasons for not using the handle to apply force to the valve stem. (Docket No. 126 at 7–9). Furthermore, Plaintiffs note that Defendants' other objections do not undermine the scientific theory underlying Dr. Bizzak's tests; rather, they are issues that can be addressed during cross examination. *See Corner Pocket, Inc. v. Travelers Ins.*, 2013 U.S. Dist.

LEXIS 109991 at *22–23 (W.D. Pa. Aug. 5, 2013). This Court agrees with the Plaintiffs.

## IV. CONCLUSION

Despite Defendants' claim that their challenge to Dr. Bizzak's testing goes to the issue of admissibility, their objections really go to the weight to be given Dr. Bizzak's testimony. Such issues are better probed at trial, when a jury can assess his opinions against all of the facts and opinions in evidence. Thus, this Court will not conflate "its gatekeeping role with the fact-finder's role as the assessor of credibility." *Jackson v. City of Pittsburgh*, 2010 U.S. Dist. LEXIS 82965 (W.D. Pa. Aug. 13, 2010) (citing *In re TMI Litigation*, 193 F.3d 613, 713 (3d Cir. 1999).

To be sure, the Court fully expects "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden on proof," at the time of trial regarding all of the issues Defendants raise in their motion. *Corner Pocket, Inc.* 2013 U.S. Dist. LEXIS 109991, at *22–23.

AND NOW, this 8th day of October, 2015, for the foregoing reasons,

IT IS HEREBY ORDERED that Defendants' Motion in Limine to Exclude Testimony of David J. Bizzak, Ph.D., P.E., (Docket No. [117]), is DENIED.

                               _s/Nora Barry Fischer_
                               Nora Barry Fischer
                               United States District Judge