IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GRETCHEN MCDANIEL, and MATTHEW MCDANIEL, husband and wife, individually and as the parents and natural guardians of A. M., a minor child, <br><br> Plaintiffs, <br><br> and <br><br> ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY, <br><br> Consolidated Plaintiff, <br><br> v. <br><br> KIDDE RESIDENTIAL & COMMERCIAL, a division of UT FIRE & SECURITY; and SAM'S CLUB, a Division of Wal-Mart Stores, Inc., <br><br> Defendants. | Civil Action No. 2:12-cv-1439 <br> District Judge Nora Barry Fischer |

## **MEMORANDUM OPINION**

This personal injury/product liability case brought in 2012 is set for jury selection to commence on December 9, 2015 and trial to follow on December 14, 2015. (Docket No. 116). In their Complaint, Plaintiffs allege that a fire extinguisher manufactured by Defendant Kidde Residential & Commercial and sold to Defendant Sam's Club did not function during a fire that occurred in Plaintiffs' home on October 17, 2010. (Docket No. 1). Plaintiffs filed suit against

1

Defendants, and the parties have been litigating the merits since. On June 23, 2015, this Court issued its final Pretrial Order, providing among other things the trial schedule and dates by which the parties would provide to the Court the materials they planned to use at trial. (Docket No. 116).

Without seeking leave of Court, Defendants served a supplemental expert report[1] written by their testifying expert, Jonathan Cagan, Ph.D., P.E., on September 25, 2015. (Docket No. 176-1). Dr. Cagan provides additional expert opinion that the subject fire extinguisher was not used in the manner as to which as Gretchen McDaniel testified because a series of tests he conducted on exemplar fire extinguishers suggest that had she used it, the valve stem of the fire extinguisher would have left a mark on its handle. (*Id.* at 4–5). He, thus, opines that the absence of such markings on the subject fire extinguisher demonstrates that she did not attempt to use it. (*Id.*).

Presently before the Court is Plaintiffs' Motion to Strike Dr. Cagan's proffered opinions set forth in the described report, Defendant's opposition thereto, and Plaintiffs' reply. (Docket Nos. 177, 184, 196). Plaintiffs argue that the disclosure of these opinions was untimely while Defendants counter that their expert's additional opinions represent a supplement to his initial expert report that is permitted under the rules. (Docket Nos. 177, 184). After careful

---

[1] The Court questions whether this report is truly a supplemental report, acknowledging parties "have a duty to supplement their expert reports, both under the Rules of Civil Procedure and the dictates of sound scientific practice," yet, "Rule 26 does not give parties the right to freely supplement, especially after court-imposed deadlines. 'Courts distinguish "true supplementation" (e.g., correcting inadvertent errors or omissions) from gamesmanship, and have therefore repeatedly rejected attempts to avert summary judgment by "supplementing" an expert report with a "new and improved" expert report.' CHARLES ALAN WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2049.1 (quoting *Gallagher v. S. Source Packaging, LLC*, 568 F.Supp.2d 624, 631 (E.D.N.C. 2008))." *Hartle v. FirstEnergy Generation Corp.*, 7 F. Supp. 3d 510, 517 (W.D. Pa. 2014).

consideration of these submissions, as well as the myriad case management orders setting and resetting the deadline for expert reports to be filed, (Docket Nos. 35, 38, 43, 52, 54), the deadlines for expert depositions to take place, (Docket Nos. 55, 57, 59, 61), the final Pretrial Order that established the dates for jury selection, trial, as well as a litany of other pretrial deadlines, (Docket No. 116), and for the following reasons, Plaintiff's Motion is GRANTED.

In sum, the Court reaches this decision because Defendants' supplemental report is untimely, in violation of the Court's Orders and Rule 26. Therefore, under Rule 37[2] and the pertinent Court of Appeals for the Third Circuit precedent the appropriate sanction for such dilatory behavior is to exclude the proffered supplemental expert opinions from the trial of this case. Dr. Cagan's testimony will therefore be limited to his background, education, training, and the opinions contained within his initial report and in his deposition.

In everyday life we are all admonished to follow the rules, otherwise there can be consequences. Here, parties and counsel are expected to follow the Federal Rules of Civil Procedure, the Court's Orders, and this Court's *Practices and Procedures of Judge Nora Barry Fischer Effective February 5, 2013*.[3] By proceeding in the fashion they have chosen, Defendants have not followed any of these guideposts.

Defendants served their supplemental report on September 25, 2015, well after the final deadline of <u>December 6, 2013</u> by which expert reports were to be served, and the final deadline

---

[2] The Court also notes that although Rule 37 provides discretion to the Court to consider a variety of potential sanctions, in situations like this where trial dates have already been set, the Court is well within its discretion to strike the supplemental report. *See Sowell v. Butcher & Singer, Inc.*, 926 F.2d 289, 302 (3d Cir. 1991) ("Counsel for Sowell failed to satisfy the obligations imposed upon him by the rules of discovery and cannot now be heard to complain that the district court erred in failing to admit expert testimony.")

[3] Available at: http://www.pawd.uscourts.gov/sites/pawd/files/fischer_pp.pdf.

of <u>June 10, 2014</u> by which expert discovery was to be completed.[4] (Docket Nos. 54, 61). Since Defendants sought to act beyond these deadlines, they had a duty to comply with Rule 16 and seek leave from this Court to make such untimely disclosures. *See* FED. R. CIV. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."); (Docket No. 130 at page 3) ("Despite a recent change of counsel, Defendants have already deposed Dr. Bizzak. Expert Discovery in this matter <u>has been closed for over one year</u>. (Docket No. 61). . . . To amend a scheduling order of the Court, a party <u>must show good cause</u>. FED. R. CIV. P. 16(b)(4).") (emphasis added). But, Defendants did not do so. Nor did they provide any justification for their tardiness. Hence, they have not demonstrated good cause. (*See* Docket No. 196 at 3).[5]

Defendants' disclosure of Dr. Cagan's supplemental expert report is likewise untimely under the Federal Rules of Civil Procedure governing the service of expert reports and rebuttal reports. To this end, Rule 26(a)(2)(D)[6] states:

> **Time to Disclose Expert Testimony**. A party must make these disclosures at the times and in the sequence that the court orders. <u>Absent a stipulation or a court order</u>, the disclosures must be made:
> (i) At least 90 days before the date set for trial or for the case to be ready for trial; or
> (ii) If the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B), within 30 days after the other party's disclosure.

FED. R. CIV. P. 26(a)(2)(D)(emphasis added). Here, Cagan's latest opinions fail to meet the timing requirements of Rule 26(a)(2)(D)(i)-(ii) because service of same was made less than 90

---

[4] Deadlines like these are employed to serve the purposes of Fed. R. Civ. P. 1, which states that the rules should be construed and administered "to secure the just, speedy, and inexpensive determination of every action and proceeding." FED. R. CIV. P. 1.
[5] *See infra* discussion at pp. 8–9.
[6] The Court notes that prior to the 2010 Amendment, this section was known as 26(a)(2)(C).

days prior to trial and more than 30 days after Dr. Bizzak submitted his affidavit, (Docket No. 132), which was filed of record during *Daubert* proceedings aimed at his testimony.[7] *See* FED. R. CIV. P. 26(a)(2)(D)(i)-(ii); *Pritchard v. Dow Agro Sciences*, 263 F.R.D. 277, 284 (W.D. Pa. 2009).

Against this backdrop, Plaintiffs suggest an appropriate sanction is exclusion of the untimely disclosed opinions from trial. (Docket No. 177). Prior to excluding such evidence under Rule 37 and Third Circuit precedent, this Court must consider (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified; (2) the ability of that party to cure the prejudice; (3) the extent to which allowing the evidence in trial would disrupt the orderly and efficient trial of the case or of other cases in the court; and (4) bad faith or willfulness in failing to comply with the district court's order. *Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 148 (3d Cir. 2000); *Meyers v. Pennypack Woods Home Ownership Assn.*, 559 F.2d 894, 904 (3d Cir. 1977); *Vorhes v. Mittal Steel USA, Inc.*, No. CIV.A. 06-1130, 2009 WL 959579, at *3 (W.D. Pa. Apr. 6, 2009) (citations omitted). Having considered each of the factors, this Court agrees with Plaintiffs that exclusion is appropriate for the following reasons.

Admitting Defendants' proffered testimony would greatly prejudice the Plaintiffs because Plaintiffs have already expended substantial time and expense analyzing Dr. Cagan's report, deposing him, and responding to his criticisms of Plaintiffs' own expert testimony. (*See* Docket Nos. 177, 196). Forcing Plaintiffs to deal with newly disclosed opinions based on experimentation, which was not previously disclosed, at this stage in the litigation would also be

---

[7] At no point during any of these proceedings did Defendants and their counsel indicate the potentiality of additional expert opinion by Dr. Cagan. (*See* Docket Nos. 118, 123, 131, 133).

5

highly prejudicial because they would have to expend even more time and money to adequately respond. *See Wonderland NurseryGoods Co. v. Thorley Indus., LLC*, 2014 U.S. Dist. LEXIS 6120, at *15–16 (W.D. Pa. Jan. 17, 2014). In all likelihood, Plaintiffs would have to depose Dr. Cagan and his assistant; secure a rebuttal report from their expert Dr. Bizzak; prepare him for and tender him for another deposition to be taken by defense counsel; amend their pretrial filings, including disclosures, exhibits, and the like, most of which have already been filed. (*See* Docket Nos. 174, 175, 194, 195). Certainly, all of this activity would cause delay and postponement of the trial date set five months ago. Moreover, delaying trial would be unjust because the fire that caused the Plaintiffs' harms occurred over five years ago, Defendant was promptly put on notice of this loss,[8] and this litigation has been pending for over three years. Adding to the prejudice, one of the Plaintiffs is a minor child, who like her parents is entitled to a just and speedy resolution of this case.

Given these circumstances, Plaintiffs cannot cure the prejudice caused by Defendants' late disclosure without significant burden, expense, and delay. Indeed the start of trial is in a little over four weeks. (Docket No. 116). Plaintiffs are in the final stages of trial preparation. They have already submitted their final witness lists, exchanged their exhibits with Defendants, met and conferred regarding any dispute exhibits, provided trial binders with copies of disputed exhibits, provided a Joint Exhibit Binder to the Court, designated Discovery excerpts to be used at trial, and responded to same as proffered by Defendants.[9]

---

[8] Allstate determined its potential subrogation claim as of October 19, 2010. (*See* Docket No. 145 at 64). The record before the Court is unclear as to the precise timing of when Allstate put Defendants on notice of its subrogation claim because Allstate's subrogation representative, Ms. Arniel, was not deposed.

[9] See page 5, *supra* (listing Plaintiffs' pretrial activity to date).

This Court has equally expended vast amounts of time and energy preparing this case for trial since it was returned to this Court from the presiding Magistrate Judge, who likewise expended significant time and energy in the pretrial stage of this case. Specifically, this Court has reviewed all expert disclosures and testimony, ruled on Defendants' *Daubert* motion, (Docket No. 181), read all of the depositions transcripts filed on the docket, and most recently received and reviewed the parties' trial exhibits and deposition designations. Concurrently, this Court has held a number of status conferences and hearings, issued various memoranda orders, including a *Daubert* opinion, (Docket No. 181), and two opinions on motions in limine, (Docket Nos. 182, 188). Moreover, this Court has already set trial dates in other civil cases pending on her Docket through mid-April 2016.

In addition to the Court's findings above, the late disclosure of Dr. Cagan's supplemental opinions can be considered "willful" for a number of reasons. First, the disclosure was served in clear violation of this Court's numerous scheduling Orders and Rule 26, without leave of Court. *See e.g.*, *Vorhes v. Mittal Steel USA, Inc.*, No. CIV.A. 06-1130, 2009 WL 959579, at *4 (W.D. Pa. Apr. 6, 2009) (citing *Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 148 (3d Cir. 2000); *and Haines v. Davies*, No. CIV.A. 1:07-CV-00851, 2009 WL 331433, at *4 (M.D. Pa. Feb. 9, 2009)).

Second, the facts that these opinions attempt to challenge (i.e. Mrs. McDaniel's attempted use of the fire extinguished) are explicitly set forth in Plaintiffs' Complaint, which was served over three years ago. (Docket No. 1 at ¶¶ 12-13) ("Gretchen reached for her Kidde fire extinguisher and as per the manufacturer's instructions, pulled the pin, pointed the nozzle at the fire and pushed the trigger. Despite repeated efforts by Gretchen, the fire extinguisher failed to

7

operate"). Further, as succinctly stated by the Plaintiffs in their briefing:

> Defendants participated in a walk-through inspection of the McDaniels' home and had an opportunity to examine the subject fire extinguisher on November 3, 2010, while Gretchen McDaniel was still in the acute phase of recovery from her injuries. Defendants' representatives, including Kidde's senior product design engineer, Mr. Mauney, were also present at the July 11, 2011 inspection and tear down of the fire extinguisher and exemplar. Mr. Mauney produced comments on Dr. Bizzak's report of the tear down on February 3, 2012 and June 4, 2012. *See* Kidde Docs. 1342–1345. Thus, [D]efendants were well-aware of Dr. Bizzak's conclusions and anticipated testimony well before the expert discovery in this case even commenced.

(Docket No. 177 at 5).

Third, Defendants themselves are large, multi-national, sophisticated corporate entities, which undoubtedly have or should have risk departments. Defendants initially retained a large, multi-national law firm. Subsequently, they retained their present counsel, an equally impressive law firm. Additionally, Dr. Cagan is a faculty member at Carnegie Mellon University; hence, he was and is readily accessible to the lawyers involved in defending this case. Indeed, he has served as a consultant and expert in this case for at least two years. Given all of these facts and circumstances the Court cannot fathom why Defendants waited so long to conduct the experiments described in the supplemental expert report. Parties are, however, bound by the actions or omissions of their counsel. *Lehman Bros. Holdings v. Gateway Funding Diversified Mortgage Servs., L.P.*, 785 F.3d 96, 102 (3d Cir. 2015) ("[P]arties cannot 'avoid the consequences of the acts or omissions of [their] freely selected agent[s]. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent[.]'") (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633–34, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962)).

If the Defendants had provided some excuse or adequate explanation for their untimely

expert submission, the Court <u>might</u> have been willing first to permit the parties to engage in further expert discovery and possibly to postpone the trial. Yet, Defendants have not pointed to a single reason or excuse for their delay. *Tolerico v. Home Depot*, 205 F.R.D. 169, 175 (M.D. Pa. 2002) ("Rule 37(c)(1) calls for the exclusion of evidence that should have been disclosed pursuant to Rule 26(a) unless (a) the non-disclosing party provides substantial justification for its failure, or (b) the failure to make the required disclosure is harmless. The non-producing party shoulders the burden of proving substantial justification for its conduct or that the failure to produce was harmless."); *Frederick v. Hanna*, No. CIV.A.05-514, 2007 WL 853480, at *4 (W.D. Pa. Mar. 16, 2007).

To the extent that Kidde relies on *ZF Meritor, LLC v. Eaton Corp.* for the argument that the exclusion of Dr. Cagan's late opinions deprives the jury of critical evidence, (Docket No. 184 at 6), the Court finds *ZF Meritor* distinguishable. Initially, ZF Meritor brought a motion; Kidde and Sam's Club have not. Regarding the first and second *Pennypack* factors, Eaton would not have suffered substantial prejudice because ZF Meritor's calculations were based on data from their initial damages report, data that was available to Eaton for nearly three years prior to its objection. *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 298 (3d Cir. 2012). Here, Kidde's proffered testimony is not based on a prior set of data that was available to the Plaintiffs. Further, the methodologies ZF Meritor used in its supplemental report were recognized by the District Court as being regularly and reliably applied by economists. *Id.* Unlike ZF Meritor's attempt to clarify its opinion testimony by changing it in a way that was a "straightforward matter of arithmetic," Kidde's proffer provides an entirely new basis for allegedly showing that Mrs. McDaniel never used the subject fire extinguisher.

*ZF Meritor* is also distinguishable based on that court's analysis of the fourth *Pennypack* factor. The *ZF Meritor* Court supported its decision to allow the supplemental damage report by finding no evidence of bad faith. *ZF Meritor*, 696 F.3d at 299. Here, the facts are not so clear. As this Court discussed *supra* page 7–8, the Defendants' submission can be considered "willful." Finally, in ZF Meritor, the Court found the proffered evidence to be critical, stating, "Expert testimony is necessary to establish damages in an antitrust case. As such, without additional damages calculations, it is clear that Plaintiffs will be unable to pursue damages, despite the fact that they won at the liability stage." *ZF Meritor*, 696 F.3d at 299.

On the other hand, the Court notes that Defendants state in their pretrial statement filed on June 18, 2015 that "the Plaintiffs' experts tested the subject fire extinguisher after the incident and confirmed that it was fully operational and free of any conditions that would have prevented its improper use during the incident, consistent with the opinion of Kidde's expert, a tenured professor of Engineering at Carnegie Mellon University." (Docket No. 112). In so far as Defendants and Dr. Cagan believe his recent analysis is critical to the trial of this case, the Court also notes that there is nothing preventing the Defendants from permitting the jury to examine the subject fire extinguisher during the trial. The jury can then draw whatever inferences they may like based on all of the evidence before them. *See e.g.*, *Thomas v. Conemaugh & Black Lick R. Co.*, 234 F.2d 429, 433 (3d Cir. 1956) ("'Jurors are supposed to reach their conclusions on the basis of common sense, common understanding and fair beliefs, grounded on evidence consisting of direct statements by witnesses or proof of circumstances from which inferences can fairly be drawn.'") (citing *Schulz v. Pennsylvania R.R. Co.*, 350 U.S. 523, 526, 76 S. Ct. 608, 610, 100 L. Ed. 668 (1956)); *see also* MODEL CIVIL JURY INSTRUCTIONS FOR THE DISTRICT

COURTS OF THE THIRD CIRCUIT § 1.5 (2015) ("The evidence from which you are to find the facts consists of the following: 1. The testimony of the witnesses; 2. Documents and other things received as exhibits; . . . You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.").

For all of these reasons,

IT IS HEREBY ORDERED that Plaintiffs' Motion to Strike [176] is GRANTED.

*s/Nora Barry Fischer*
Nora Barry Fischer
United States District Judge